ELMER E. ADAMS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 20, 1899.*

1. CRIMINAL LAW—*jury must be accurately instructed where evidence is close.* Where the evidence in a criminal case is close it is highly essential that the jury be accurately and fully instructed as to the law of the case.

2. SAME—*assault with intent to commit rape—instructions.* Where the evidence at the trial of one charged with assault with intent to commit rape tends strongly to show that what was done by the accused was not against the will of the prosecutrix, the accused is entitled to an instruction advising the jury that they might consider whether the "manner and conduct" of the prosecutrix encouraged the accused to make approaches or advances looking toward sexual intercourse.

3. SAME—*when voluntary instruction by court is ground for reversal.* An instruction given by the court of its own motion, in a trial for assault with intent to commit rape, is ground for reversal which clearly indicates it was the opinion of the court that it had been proven the prosecutrix made some resistance, which was a matter of serious and vital dispute.

WRIT OF ERROR to the Circuit Court of Bureau county; the Hon. CHARLES BLANCHARD, Judge, presiding.

CHARLES K. LADD, and GEORGE S. SKINNER, for plaintiff in error.

WATTS A. JOHNSON, State's Attorney, and JOHN SCOTT, for the People.

Per CURIAM: This is a writ of error brought to review a judgment of the circuit court of Bureau county adjudging the plaintiff in error to be guilty of the crime of an assault with intent to rape.

The prosecuting witness was the wife of a farmer. Plaintiff in error was in the employ of the husband as a farm hand and was living in the family of the husband, where he had lived and worked before. The prosecutrix had known him some eighteen years. On the 28th day of July, 1898, the husband and the plaintiff in error were to be employed in threshing grain with a threshing machine about eighty rods north-east from his home and were to take breakfast at the home of the owner of the grain to be threshed. The husband arose early, directed the plaintiff in error to go to the barn, which was one hundred and twenty-four feet north-west of the house, harness the team of horses to the wagon, get a tank of water and bring it to the thresher. The husband left the house and started to walk in a north-easterly direction to the thresher. A public road ran east and west some seventy or eighty feet north of the barn. Before reaching this road and at a point about four hundred feet north-east from his home, the husband discovered he had forgotten his threshing jacket or coat and returned to the house to get it. He saw the jacket had been taken from the nail where he had hung it, and, as he testified, supposed his wife, the prosecutrix, had taken the jacket to the barn to give it to the plaintiff in error to bring to him. He started to the barn, going around the south-west cor-

ner of his house, and when he turned the corner saw his wife step into the door of the barn on the east side and at the south-east corner thereof. He testified he saw the plaintiff in error seize hold of his wife the moment she stepped in the barn; that he ran at once into the house, got his revolver and ran to the double doors opening into the drive-way of the barn, some fourteen feet north of the door at which his wife had entered; that he heard no noises from within the barn; that he opened one of the double doors and saw his wife lying on some scattered hay on the barn floor, her person exposed and the plaintiff in error lying down upon her; that he rushed in and ordered the plaintiff in error to throw up his hands or he would blow his brains out; that the plaintiff in error begged him not to shoot and ran out of the south door of the barn; that he, the husband, turned to his wife, the prosecutrix, slapped her and called her a damned whore and then ran out of the barn after the plaintiff in error.

The prosecutrix testified that after her husband left his home she observed he had not taken his threshing jacket, and that she took the jacket to the barn to have the plaintiff in error take it to her husband; that plaintiff in error invited her to step inside the door of the barn, and she did so and he seized hold of her and took her into the drive-way of the barn; that she told him to leave her alone or she would tell her husband, and that she would "hollar" if he did not leave her alone; that he said there was no use to hollar—there was no one around to hear; that she said her husband might come back after his jacket and see him; that plaintiff in error said, "No, he won't;" that one of the double doors was open and he pulled it shut and threw her down on the hay, and her husband then opened the door and came in; that she had struck the plaintiff in error in the face with her hand and was crying before her husband came in, but did not make any outcry or other noise; that the plaintiff in error jumped up and her husband threatened to shoot him;

that she was then sitting on the floor, and her husband came to her and slapped her and called her a damned whore, and slapped her again and told her to sit still; that the plaintiff in error left the barn and her husband ran out after him.

The testimony of the plaintiff in error was, that the prosecutrix came to the barn where he was putting the harness on the horses, and that her conduct and demeanor were such as to encourage him to believe she would not resent his advances. He detailed a conversation which he alleged occurred between them, which need not be here repeated, clearly indicating her willingness to have sexual intercourse with him. He testified she went willingly and voluntarily into the drive-way of the barn, where there was a pile of hay, for the purpose of having such intercourse; that she lay down upon the hay and he closed one of the double doors of the barn, which stood partly open, and had just returned to her side when her husband threw open the door and rushed into the barn; that he jumped up and the prosecutrix attempted to arise, but her husband slapped her and knocked her down on the hay and called her a bitch and a whore, and struck her several times and until he, the plaintiff in error, attempted to remonstrate, when the husband threatened to shoot him and he ran out of the barn.

The prosecutrix, as an excuse for not making any outcry, said she did not suppose she could make any one hear her and that she was frightened. We find nothing in the testimony to indicate the plaintiff in error, by any threat or any act, sought to put her in fear or that she was induced to refrain from making outcry through intimidation. Her husband was but about one hundred and twenty-five feet away from her when she entered the barn, and while she did not know of his presence there it clearly appeared from her testimony and that of her husband that she knew he could not be at any great distance from the house. She testified her husband left the house

but a few minutes before she started to the barn. Her husband testified he walked about four hundred feet from the house and then turned about and came back for his jacket. He reached his home, entered, saw his jacket was not where he had left it, and started to the barn at the moment she stepped into the door of the barn. There is much force in the argument the husband was at no time after leaving his house beyond the hearing of an outcry from the barn, and that this fact was within the knowledge of the prosecutrix. The circumstances of the case tended strongly to establish that whatever was done by plaintiff in error was not against the will of the prosecutrix. The treatment of the prosecutrix by her husband when he discovered the parties in the barn is consistent only with the view it was the belief of the husband, from all of the circumstances, the acts of the plaintiff in error were not without the consent of the prosecutrix.

It was highly essential the jury should have been accurately and fully instructed as to the law of the case. The plaintiff in error asked, and the court refused to give, the following instruction:

"If the jury believe, from the evidence, that on or about the 28th day of last July the prosecutrix went to the barn where the defendant was engaged in harnessing horses, and that mutual overtures were made between them, leading into a mutual understanding and design to have intercourse there in the barn when they were discovered, then the jury are instructed they must find the defendant not guilty."

It is not denied this instruction was proper to be given, but it is thought the principle sought to be announced was covered by other instructions which were given. It is no doubt true, principles of law were announced abstractly in other instructions comprehending the principle involved in the refused instruction. But the refused instruction applied the legal doctrine directly, would

have been more readily and clearly understood by the jury, and should, in view of the particular circumstances of the case, have been given.

We think the court erroneously modified an instruction given on behalf of the plaintiff in error. The purpose of this instruction was to advise the jury they might consider whether the "manner and conduct" of the prosecutrix encouraged plaintiff in error to make approaches and advances looking toward sexual intercourse. The court so modified the instruction as to ignore the view the consent or will of the prosecutrix might be indicated by her "manner or conduct" on the occasion in question.

The court prepared an instruction of its own motion and read the same to the jury, in the course of which, while treating upon that which it was proper for the jury to consider in determining whether the plaintiff in error attempted to accomplish his object by force and against the will of the prosecutrix, he advised the jury that they might consider "whether she made all the resistance at the time she was reasonably capable of under the circumstances surrounding her, considering the relative strength of the parties." The implication is apparent that the court held the view that it was proven the prosecutrix made some resistance, which was a matter of serious and vital dispute. The circumstances of this case were such the slightest intimation as to the opinion held by the court as to a controverted fact might have had undue weight with the jury.

Upon a full consideration of the whole record we can not escape the conclusion the court erred in denying the motion for a new trial. The judgment is reversed and the cause remanded.     *Reversed and remanded.*